The next argument is in Appeal No. 05-3133, Fields v. Department of Justice. Mr. Ross, welcome. Good morning. Please proceed. Thank you. May it please the Court, I represent Special Agent Edward Fields, the appellant. Your Honor, this is yet another case where a federal employee who has brought an action under the Whistleblower Protection Act was denied both discovery and a hearing based on an administrative logic. I don't think there's any relevance about whether this case compares with some other case. The question is whether in this case, on this record, there's reversible error. That's all that's proper to address here. I understand, Your Honor. Your Honor, I think the issue is whether or not a number of disclosures that my client made were protected disclosures. And the finding of the administrative law judge was that there was no non-frivolous showing of jurisdiction sufficient to warrant a hearing on the merits. Well, what about the Huffman case? That seems to be the critical authority, at least to me. I agree. So the question seems to be, do your facts fall under the holding of Huffman, or are they so very different that Huffman is utterly irrelevant? No, Your Honor, I think they fall squarely within Huffman. How so? Well, Your Honor, in Huffman, this court decided that there were basically three different categories of disclosure. The first category is a disclosure where part of the individual's duties is the disclosure of misconduct. What was the result in Huffman? Judge, I don't remember what the result is in that particular case, but I know that we fall within the third category. And that is a situation where an individual does not have the investigation of misconduct as part of his duties, but where he is required to disclose misconduct as part of his duties. Putting aside the exact verbiage or your interpretation of it from that passage of Huffman, isn't the principle of Huffman that if it's part of your job to make such reports or disclosures, then they can't be protected under the Whistleblower Act? But if it's not part of your job, they are protected under the Whistleblower Act. That's correct. So that's where the line is drawn. If it's part of your job, no whistleblowing. If it's not part of your job, it is whistleblowing. So then the question becomes, is it part of a DEA agent's job to report any wrongdoing that he may become aware of, whether it's the conduct of Ms. Pantos or whether it's false reporting by the agents in Bogota? I would think, at a glance at least, that both those types of reporting would be inside the scope of the duties of a DEA agent, not outside. Well, Your Honor, my client clearly falls within the third category in Huffman, which is protected. And that is, even though he has an obligation to report misconduct by other agents, that's not the principal part of his duties. His duties are basically— Well, I'm asking whether the principal doesn't do—concerns it is one of your duties or it isn't. I wouldn't think it's a good answer to say, well, it's not the principal's duty. All right, well, maybe it's not the principal's duty, but maybe it's one of five duties, four of which, let's say, are secondary. But if they're part of the duties, as I would read Huffman, it seems like it's not a whistle—a protective duty. So, Your Honor, Your Honor only articulated two of the three categories. My client falls within the third category, and that is that, yes, it is part of every agent's duties to report misconduct on the part of a colleague. That's clear. Then why do you escape? Because he comes within the third prong of Huffman. Because of what? Because the third prong of Huffman basically says that even if you are an agent that is required to report misconduct, if that's not your primary duties, if your primary duties are something else, then you're protected. I don't see a primary duties exception to Part 3 of the Huffman rationale. What language are you depending on? The third category, Your Honor, says where an employee is obligated to report wrongdoing, but not as part of his normal duties, and he has not been assigned the task of investigating wrongdoing, then it's protected. Well, let's take the Bogota issue. Wasn't Field specifically assigned to provide factual information about what had happened with the informant, which he knew because of his conversations with the Bogota-based DEA agent? But those were not his normal duties, Your Honor. It doesn't make any difference. They were specifically assigned. Well, but it was not a normal assignment. This only came up because there was an issue with the arrest of the Bogota informant. What difference does it make? If I'm a government employee and I'm assigned to do something that's lawful by somebody who's one of my supervisors, that becomes my duty, I think, without a question. Well, every agent is required to report wrongdoing, but not every agent who reports wrongdoing is not protected. Well, it may depend on the circumstances. If the agent goes up to Congress or goes to the New York Times reporter and reports some perceived wrongdoing, I might agree with you. But if the agent simply files a second investigative memo relating his recollections to the head of the Miami office, it seems to me that's quite different. Well, Your Honor, I think that Mr. Field's situation is exactly like Your Honor's situation, except if he were told to go to the New York Times by a supervisor or he was told to report it, then it would just clearly fall within the Field situation. But he was told to write a memo, which he wrote in conjunction with someone else, about what facts he could find out about Bogota, wasn't he? That's true. It was assigned to him, but those are not part of his normal duties to investigate misconduct. What is the difference whether it's part of his normal duties? If he was assigned to do it, he was doing it not as a volunteer, which is the typical whistleblower, but as part of his duties. I mean, in one sense, I suppose you could say his normal duties include whatever he's assigned to do. Is that not fair? Your Honor, I think if he were an OPR inspector and his duties were to investigate wrongdoing and he reported this, he would not be protected. But I think as a regular agent who is generally, his duties are to investigate and prosecute narcotics violations, not misconduct by other officers. If he does this, he is protected under the third category of Hoffman, and I think it's absolutely clear. How can it be whistleblowing to carry out an assignment to report something to the regional chief in Miami? Well, it was an assignment, but it was not a normal assignment. I don't understand what you mean by normal. If you mean does it happen every day, well, of course not. But if you mean by not normal that a drug investigator was asked to be the janitor in the building or be a firefighter in case there was a fire in the building, well, that would make some sense to me. But to say that in relation to drug carrying by informants under the supervision of DE agents in Bogota, that that's so far away from his, quote, normal duties that it should be considered not within the scope of normal duties, that just seems very far-fetched to me. What's the basis of that? Well, the basis is I think you have to understand the context in which this arose. These informants were arrested in Bogota attempting to bring acrylic into the United States, and the Bogota agents denied that they knew anything about it. Fields, when questioned, said, yes, I knew about it, and so did they. I had a conversation with them where I told them that that was going to happen. So if they're saying that they didn't know about it, they're lying. And then he was asked to do a memo about that. Did he at any point in the memo specifically say that the agents lied when they said that?  He said in the memo, one of the agents, Javier Peña, knew about this because on a specific date, he and I had a phone call where we discussed it, and he okayed it. But he's simply chronicling facts. That's true, Your Honor. And I would concede that there is no statement in that memorandum that says there's misconduct on the part of this agent and the misconduct is X. But if you look at it within the context, he's clearly alleging that Mr. Peña is lying when he denies that he didn't authorize it and that he in fact authorized it. What about the incident involving a lawyer, Pantos, I believe her name was. Yes. How is that outside the scope of his duties when it comes up in the context of an investigative interview of him sealed by the Office of Professional Responsibility based on an allegation against him by her? So he's the defendant, so to speak, in the interview, in the investigation, and he makes an offhand statement about her motivation. How is that outside his duties when he's being interviewed as the target of an ethics probe? Well, Your Honor, first of all— Is it not within his duties that he's required to answer questions from OPR investigators during an OPR investigation of his conduct? This was something quite— It's a yes or no question. Is it within his duties in your opinion or not? To have to answer questions from OPR? Yes. Absolutely, but it was not within the scope of his duties to bring up new material that they didn't know about, and it was hardly an offhand comment, Your Honor. It was very precise, and he raised it again and again. She pressured me, and at one point he even says, she pressured me to lie, and I wouldn't do it, and that's why she's doing that. How is he a volunteer in that circumstance? He's in an interview that's mandatory. He's answering questions about his interactions with the lawyer for the agency, and it seems to me that that's the opposite of being a volunteer. He has to answer those questions, but you seem to say in mid-sentence, after he answers part of a question, that then when he refers to pressure from her, suddenly now he's a volunteer, changed status? Yes. In that split instant in the middle of the sentence? Your Honor, in the vast majority of instances where agents are the targets of OPR investigations, they do not make allegations against other people. That is something quite unusual, and as long as he's defending himself and only defending himself, he's not a whistleblower, but at the point in time where he makes a new allegation against someone else. So the answer to my question is yes, he instantly in mid-sentence becomes a volunteer as soon as he says something about the credibility or motivation of the person making the allegation against him. Your Honor, I don't think what he did was he said, she asked me to lie. But it's a matter of law. You are maintaining that in mid-sentence he becomes a volunteer, even though the interview is mandatory. I think that's absolutely true, Your Honor. An administrative interview is mandatory and he had no choice. However, at the point in time when he raises new allegations that he believes or reasonably believes are true, he becomes a whistleblower. Why are they new? She said, as I understand it, essentially, that he distorted the testimony and wasn't truthful. He says, no, I was truthful and she's distorting the truth. So that's not new matter. That's the exact same matter. It's just the flip side of it, her perception versus his perception. Right, and I think that's sufficient. That is new. The old allegation was that he was engaged in some sort of improper conduct. The new allegation is, I wasn't, she was. On the exact same instance? Well, Your Honor, I don't think it's exactly the same, but it comes out of the same facts and circumstances, yes. All right, do you want to save the remaining rebuttals? Yes, Your Honor, thank you. Thank you, Mr. Roth. Mr. Jager, good morning. Do you agree initially with the premise of Mr. Roth that in order to get a hearing on the merits here, all that was required was a non-frivolous allegation that the two disclosures here were protected disclosures within the meaning of B-8 of the whistleblower act? In order to get a jurisdictional hearing? No, to get a merits hearing. To get a merits hearing? No, I think what he needs to establish first is an entitlement to a jurisdictional hearing. Then, once he's established that, then we'll go to a merits hearing. Well, what was the evidentiary material in front of the administrative judge here? The administrative judge had before him the Pantos Memorandum, the interviews, Friis Memorandum. Mr. Fields was specifically given an opportunity to present the evidence that he thought demonstrated a non-voluntary allegation. Documentary evidence? Yes. But there was no offer of a live hearing? Not at that time. Was a live hearing requested? I don't know if it was requested. Why don't you know that? I don't believe so. So then you would think that there was no denial of a requested opportunity of Fields to testify live in front of the administrative judge? I'm not aware of such a request. So then your view, I guess, is that on these materials, the only correct legal conclusion is that they do not get above the line of a frivolous allegation into the territory of non-frivolous allegations? Correct, Your Honor. And why not? In other words, what more would Fields have had to say to get above that line? Well, if you take, for example, the Pantos allegations, he would have to come up with something more than just general subjective allegations, particularly in this case. Well, I don't understand what you mean by subjective. He's testifying, he says, to his recollection of what a lawyer told him, which he says essentially was that the lawyer asked him to lie. Now, it may not be true. I have no idea whether it's true or not that the lawyer asked him to lie. But what is deficient about the allegations so that we must label it as a frivolous allegation? Well, he needs to say something more than just she pressured me to slam the testimony or she pressured me to lie. He needs to say something that is specific. Like, what is it that she said precisely to make him think that that's what she was requesting him to do? And I think to get a good picture of what was in front of the administrative judge, you need to look on the one hand at what Mr. Fields' allegations were versus what is contained in the Pantos and Freeh's memorandum. Those memos, especially the one by Ms. Pantos, are very detailed. They're contemporaneous accounts of the communications that went on between Mr. Fields and Ms. Pantos. Well, you can't be suggesting, can you, that in deciding whether an allegation is frivolous, an A.J. looking only at documents like her memo, Pantos' memo, is entitled to make credibility judgments that she's telling the truth and he's lying and therefore his allegation is frivolous. That can't be your position, can it? Well, I think the administrative judge, in looking at the lack of specificity that's contained in Mr. Fields' allegations— I'm not asking about specificity. I'm asking about credibility determinations. May the A.J. in this context make credibility determinations, yes or no? I don't believe so. No, okay. Now, go ahead on your point on specificity. She's more specific than he is. Q.E.D., his allegations are frivolous? No, because if you compare—I'm saying that standing alone, his allegations are so subjective and so general that they simply do not rise to the level of specificity that's required. Did he actually state that she said to him in so many words, this is what I want you to testify to? Or is this just—is your point that she didn't say any of such things and this is just his general conclusion from her attitude? I think it's the latter. If you read his interview and the statements that are contained in his interview, repeatedly he states, my feeling was, with respect to what she was telling me, my feeling was, my feeling was. That underscores the subjective nature of it. He said he interpreted what she had done as asking him to slant his testimony. That was the word, I think, he used. But I take it that there's nothing to show that she said to him now, no matter what happens, this is what we want you to state under oath at this hearing. There's nothing like that. There's nothing anywhere close to that. Mr. Fields never provides a specific statement that Ms. Pantos said. And again, if you compare that to the contemporaneous account that Ms. Pantos gives in her memorandum, there she provides some very specific details about what she was doing. And what she was doing was challenging his inconsistent statements that she needed to do as a lawyer who was faced with a situation where not only was one DEA agent already giglio impaired, but potentially a second one was going to be giglio impaired. So Mr. Fields' statements standing alone do not contain the sort of specificity that's needed to get beyond that. And you say it's frivolous because in the light of what she said, he didn't give any precise basis for his claim. It was just a general statement that anyone can. I mean, it's very easy for me to say, well, I spoke to the lawyer, and I think he was telling me I should testify this way or that way. I think, standing alone, his statements do not rise to the level of non-frivolous. But if you compare them to what Ms. Pantos did in her memorandum, that just underscores it and makes it all the better. So if we can resolve this case just looking at his statements, it seems like what you're saying is that since he doesn't quote her as saying anything relating to lying, that on its face it's frivolous. That it's too non-specific. Too subjective is the word you kept using. His statements are too non-specific and too subjective to rise to the level of non-frivolousness that's required. And by his statements, you're referring to the statements in the appeal papers themselves or in his deposition of his OPR interview? With the OPR. That's what he's claiming were a protected disclosure. That's where he claims it was a disclosure, when he told the OPR people that she had asked him to slant his testimony. And of course, slanting your testimony, I don't know if that is even really suggesting giving false testimony. I could suppose say to the witness, now, when you testify, I hope you will stress this and this. And in a sense, you'd say that slanting his testimony, telling what they'd like the witness to emphasize, that that doesn't mean that they're asking the witness to lie. And that was exactly what the administrative judge found, that there was no allegation that she attempted to get him to lie or to otherwise commit something that could have been a violation of law. That the allegation of somebody trying to slant the testimony is not sufficient. There was a line in his interview in which he uses the word lie. There were locations in his interview, as I recall, where he uses the word slant. The administrative judge picked up on that word. Judge Friedman is helping us focus on the proper meaning of that word as it would have been used in those cases by those two people. But there was one line, at least, as I recall, where he uses the word lie. Toward the end, he does use the word lie. What is insufficient about that? Because, again, to simply say that she was asking me to lie, there has to be something more. There has to be something more specific. Well, just a minute. Do we have some case saying that an accusation that you're asked by a fellow government employee to lie in the course of a hearing in front of the Merit System Protection Board is frivolous, unless the solicitation of the lie is quoted verbatim? Is there some authority saying that? I'm not aware of a case addressing those exact facts. I think it's the Lachance case that talks about you need something more than just subjective, nonspecific allegations. I'm not aware of any case that would address the exact facts. Well, I'm trying to get from you where you think the line is going. How do we know when we've crossed the line from nonspecific allegations to adequately specific allegations? Well, we do that all the time in the law. For example, when you allege fraud at the trial level, you have to do so with a certain level of specificity. You can't just simply say you committed fraud and you lied to me. Well, there's a special rule about fraud, so that's not a good example. Here, we're talking about solicitation of lies. And there isn't a special rule that I'm aware of for that. So then we have to ask, well, generally speaking, how specific does an allegation of solicitation to lie have to be in order to cross the line from frivolous into non-frivolous and therefore actionable? Well, I think you'd have to perhaps get into the area of what would a reasonable person, an objective person sitting in his position, would reasonably believe. Would a person sitting in that position reasonably believe that this attorney was soliciting or tampering with a witness? And I think in that instance, the facts lie very much against those jurors. It seems that Ms. Pantos' memo was contemporaneous with the event. Are you suggesting that unless the alleger has a contemporaneous memo, that he can't meet the non-frivolous test? No, but I'm suggesting the fact that he waits eight months before making his disclosure only does so in response to an administrative investigation that's targeting him. I think that militates against— Well, I'm not so sure. It's what I'm trying to test. Suppose that I'm field, and my testimony is, I recall that Habe was not in the office on a certain date. And Ms. Pantos tells me, no, no, don't say that. You've got to say he was in the office on that date. Now, even if it's eight months later, and even if it's raised in response to an OPR question, isn't that statement specific enough to be a non-frivolous allegation? I would say that the statement may be specific enough. In my hypothetical. In your hypothetical, the statement could be specific enough. And does it matter if it is specific enough that it was eight months later? I think what it does is it casts doubt upon the credibility of the statement. Yeah, but I thought you agreed with me that the AJ is not entitled to make credibility findings off their paper. I understand. So that if it only goes to credibility, the delay of eight months would seem to not be a relevant factor. Well, if you're talking about for purposes of jurisdictional— Yeah, that's all we're talking about here. Okay. A non-frivolous allegation that would give rise to jurisdiction, that's all we're talking about. I think under the precedence in that scenario, he could still be disciplined for not doing it, for delay. That's not the issue. I understand. But I think the case is halted, even though you could be—and I think Hoffman holds this— But do you agree that delay is not a relevant factor in a case where the allegation itself is specific enough? For purposes of jurisdictional merit. Yeah, right. I would say, yeah, it's not an important factor. Well, doesn't the ultimate question come down to really pretty much what she said? In other words, she could have said rather innocuous things, and the person hearing her could draw all sorts of inferences. And I take it your position is in that situation where whether she was engaged in improper practices necessarily must turn on exactly what she said. His allegations are insufficient because he never sets out precisely what she said. He never gives the factual basis of her statement upon which he drew the conclusion that she had asked him to lie or to slander his testimony. Something more had to be done. If he had said, after all of this discussion, finally, she said to me, I don't care what you remember. You've got to testify at the hearing as follows. And she then said, that would have been enough, I take it. I think in that latter scenario, yes. But the problem, you say, is that you look through all of what he said, and all you find are conclusions he drew from undisclosed wording by her. Now, would you agree that even in the context of an answer to an OPR interview, if he had been as specific as to her exact words as Judge Friedman's hypothetical poses, that that would be a non-frivolous allegation? In the context of an OPR interview, he makes a disclosure? No, in the context of the OPR interview, he says exactly what Judge Friedman said. And in doing so, makes his disclosure? Yes. I think that would be sufficient, or could be deemed sufficient. So really, it's the specificity. It's quoting the solicitation to lie that's the key thing. It's not how many months later it is. It's not whether he has a contemporaneous memo in his own file. It's not whether it's part of an OPR interview, an investigation against him. All those things may be interesting background, but it seems like what you're really saying is the key test is, can he quote the solicitation to lie? Well, I don't know about quoting it. Or paraphrase. Yes. But he has to provide specificity, and it has to get past something that's just subjective. All right. Thank you. Mr. Roth, you have? Yeah, I guess I'm a tuner. Sorry. Thank you. You don't have any rebuttal. You're into his time. I'm sorry. Your Honor, the kind of specificity that counsel is looking for is located in the appendix at pages 254 to 255. During his OPR interview, one of the issues that arose is when certain people were notified about Mr. Habey's potential Giglio or Hendthorne problems. Mr. Fields had indicated that he thought that he first heard about that issue in October of 1998. It was apparently the position of counsel, Ms. Pantos, that it was earlier. It was August of 1998, not October of 1998. Fields said it was October of 1998 because that's when I got Chief Counsel's Giglio memorandum. And the Giglio memorandum was, in fact, sent in October. He says on pages 20 to 21 of our brief and in the appendix on page 254 to 255 absolutely clearly that she tried to get him to say it did not happen in October as he recollected it, but it happened in August. Based on what? You said her position was it was earlier, but I don't understand what you mean her position. Was there some other indicator that it would have happened earlier? Yes. Apparently she interviewed an assistant special agent in charge, Gonzalez, who was Fields' immediate supervisor, who said, I believe it happened in August. So there were two different recollections. One guy's recollection is August. The other guy's recollection, Fields, is October. And so if she is the lawyer for the agency says, well, wait a minute. You say October, but maybe it was earlier because, look, this other guy recalled it as being earlier. That doesn't seem like it's a solicitation to lie. That seems like trying to refresh the memory of the witness based on some extraneous source of information. Well, but, Your Honor, I would suggest that it really depends on how it was approached. And if Fields reasonably believed it was a solicitation to lie and not something more benign, that should have required a hearing. Those kinds of determinations, in my opinion, cannot be made by an administrative law judge on things that are that subjectively close. I think we have your case, and your time has expired. We thank both counsel. We'll take Fields v. Justice under advisement. The final argument of the morning is in Appeal Number 05-5127, Rygard v. United States. Mr. Sheldon, good morning. Welcome. Please begin. May it please the Court, my name is David Sheldon, and I represent the appellant in this case, Lawrence Hurd.